UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

CONTINENTAL FREIGHT
FORWARDING, INC,
a Florida Corporation

      Plaintiff,

vs.

EFRAIN DOMINGUEZ, individually

      Defendant.

_____/

## **VERIFIED COMPLAINT**

Plaintiff, CONTINENTAL FREIGHT FORWARDING, INC (hereinafter "CFF"), sues Defendant, EFRAIN DOMINGUEZ (hereinafter "DOMINGUEZ") by and through the undersigned counsel, hereby files and serves the instant Complaint and states:

## **PARTIES, JURISDICTION AND VENUE**

1.    CFF is Florida corporation, with its principal office located in Miami-Dade County, FL.

2.    DOMINGUEZ is an individual residing in Miami-Dade County, Florida and is otherwise *sui Juris*.

3.    Jurisdiction over CFF's claim under the Defend Trade Secrets Act (DTSA), 18 U.S.C. §1836, is based on and 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction CFF's state law claims under 28 U.S.C. § 1367 because CFF's state law claims are so related to the federal claim that they form the same case or controversy under Article III of the United States Constitution.

4.     EFRAIN DOMINGUEZ was employed by PLAINTIFF up to April 1, 2025.

5.     Pursuant to 28 U.S.C. § 1391, venue properly lies in Southern District of Florida as DOMINGUEZ resides in Miami-Dade County and as the harm accrued to CFF in this County.

6.     All conditions precedent to the bringing of this action have been met or waived.

## FACTUAL ALLEGATIONS

7.     CFF, located at 2301 NW 107th Ave, Suite 104, Doral, FL 3317 is in the business of freight forwarding. CFF has been in business since 1995.  CFF has steadily built a solid client base for almost (30) years.  CFF uses certain vendors, such as truck drivers or transportation companies, to move freight throughout the world.  CFF has learned, through trial and error for approximately thirty (30) years, which vendors and transportation companies do a good job at a good price.  This long history has allowed CFF to match client needs to the most efficient and cost-effective vendors.

8.     Over the last three decades, CFF's efforts to build a solid client base and reputation in the industry has led to the growth of the company to a level in which CFF employs approximately thirty (30) individuals.

9.     CFF's often obtains new business based on referrals from existing customers that have been satisfied with CFF's services.

10.     CFF's vendors are not a matter of public knowledge.  The  prices that each vendor negotiates with CFF are rarely, if ever, within the public domain.

11.     CFF derives economic value from its client and vendor lists and preferences. CFF has built goodwill in the freight forwarding industry for about the last thirty (30) years. This gives CFF a competitive advantage in the marketplace and has allowed CFF to grow

2

over the years.

12.     DOMINGUEZ worked for CFF from 2007 to April 2, 2025, and held the position of freight agent in Domestic Operations.  DOMINGUEZ' job was to take in orders from customers who needed freight to be transported,  usually across state lines, and to use his discretion to find the best vendor that could transport the freight.

13.     DOMINGUEZ also had knowledge of which customers of CFF might generate the most profit for CFF based on confidential information such as client preferences, preferences for the costs of transportation charged, and other factors.

14.     DOMINGUEZ has a noncompete agreement that prevents him from working with competitors. (Ex. A).

15.     DOMINGUEZ, like other employees, was given a password to sign into CFF's computer system. Only employees with a password can access the client list.

16.     Toward the end of March 2025, CFF noticed some unusual activity and discrepancies in connection with DOMINGUEZ' accounts.  This touched off a review of all of DOMINGUEZ' e-mails and communications with customers and vendors.  One customer, Bellini Boca Raton, d/b/a/ Bellini Baby and Teen Furniture, 2980 N. Federal Highway, Boca Raton, Florida 33431, has cooperated with CFF's efforts to get to the bottom of DOMINGUEZ' activities.

17.     CFF's investigation has revealed that DOMINGUEZ defrauded CFF in at least five ways.

18.     The first way was to shift the costs of jobs for which DOMINGUEZ benefitted personally to other customers of CFF whose profit margin was higher. CFF gave DOMINGUEZ the discretion to pick certain vendors and to negotiate the cost of moving

3

freight with those vendors to maximize profit.  DOMINGUEZ gained knowledge in his job pertaining to how much certain customers would pay and how much certain vendors would charge. Thus, DOMINGUEZ was able to assign an inflated cost to customers whose business generated a higher profit to cover the cost of some of the jobs on which DOMINGUEZ was paid directly.  This caused CFF to absorb the costs of the freight jobs for which DOMINGUEZ profited personally.

19.    CFF continues to accrue damages based on this practice because some of the customers with whom DOMINGUEZ surreptitiously dealt with in this way were charged less than what was needed for CFF to make a profit and became accustomed to the lower rates, making it difficult or impossible for CFF to maintain the client after the cessation of DOMINGUEZ' employ.

20.     Second, DOMINGUEZ directed clients to make Zelle payments to himself using his cell phone number as a Zelle identifier for shipments that should have been billed and paid to CFF. (Ex. B - Fernandez Aff.).  One example includes the fraud involved one of CFF's customers, Harrah's Casino. *Id.*

21.    As per an e-mail dated February 25, 2025, Maite De La Cruz, who works for one of CFF's customers, Harrah's Casino, requested a quote to have some items transported to Arizona. *Id.*  Using a company e-mail, DOMINGUEZ wrote back that the charge would be $895 and would take 4-5 days. *Id.*

22.    De La Cruz asked about using Zelle as a form of payment. *Id.*  DOMINGUEZ then provided her with his personal phone number to be used to make a payment to him directly using Zelle. *Id.*   Upon information and belief, payment was made, and the monies were kept by DOMINGUEZ. *Id.*

23.     Third, DOMINGUEZ altered CFF's mailing address from PO Box 226650, Miami, FL 33222 to his personal residence at 8065 N.W. 198 Ter, Hialeah, FL 33015. *Id.*

24.     Fourth, DOMINGUEZ informed at least one client that CFF could no longer assist them with domestic shipping.  *Id.*  This was a lie.  In one documented instance CFF has uncovered DOMINGUEZ told a client CFF is no longer allowed to ship domestically, and he referred the customer to Saturn Freight systems, a company with which CFF is not affiliated. *Id.*

25.     Fifth, DOMINGUEZ misappropriated checks and engaged in bank fraud. There are a series of checks that one of CFF's customers, Bellini, recently sent to CFF after CFF requested a record of recent payments. *Id.* These checks were written to "Continental" or "CFF." *Id.*   The back of those checks have CFF as an endorsement. *Id.*   However, CFF never received the monies from those checks.   These checks total $9,234 and are checks written from one customer, Bellini, between January 10, 2025, and March 31, 3035. *Id.*  These checks were drawn from Bellini's bank, Bank of America, and were deposited into an account at JP Morgan Chase. *Id.*  CFF does do its banking at JP Morgan Chase; however, that bank is used on occasion for used for international payments and not for client payments of shipments.  Bank of America is seeking to recover those funds as a "Forged Endorsement."

26.     These are examples of probably dozens if not hundreds of instances in which DOMINGUEZ has stolen money from CFF.

27.     Upon information and belief, DOMINGUEZ' fraudulent actions may go back several years. CFF is still auditing the fraud committed by DOMINGUEZ.   CFF's preliminary estimate suggests that he could have been stealing as much as $25-30,000 a month in profits.

28.     DOMINGUEZ was sent home and fired on April 1, 2025.  Since that time CFF has learned that he has reached out to some of some of CFF's customers to further his fraudulent activities.

29.     DOMINGUEZ will continue to use his unique knowledge of Continental's customer base and vendor pricing to steer business away from Confidential absent injunctive relief.

## COUNT I

### Violations of the Defend Trade Secrets Act (DTSA)

30.     The DTSA, which amended the Economic Espionage Act, 18 U.S.C. § 1832, to add a federal civil cause of action, defines "trade secret" to include all forms and types of financial, business or economic information, including patterns, plans, compilations, methods, techniques, processes, procedures, or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

31.     During the course of his employment with CFF, DOMINGUEZ was provided access to and acquired substantial amounts of CFF's trade secrets, including, *inter alia*, its customer lists and confidential information about customer pricing and preferences as well as vendor information concerning pricing and preferences not known to the general public (hereinafter "Trade Secret Information"), as described herein.  Such information included trade secret information about CFF's business, services in the region, finances, customer lists, and sensitive, confidential and proprietary information about CFF's customers, including but

6

not limited to, customer tolerances for certain costs. CFF painstakingly gathered and used this Trade Secret Information over the last twenty-nine years to enhance its profitability by, *inter alia*, pairing certain customers with certain vendors in a way that increased profitability for CFF, or, if necessary, assured better service to enhance customer retention. DOMINGUEZ was apprised of such Trade Secret Information and has used such information for his personal gain both during and after his employ.

32.     The Trade Secret Information was and is developed and maintained by CFF at great time, cost, and expense, and is maintained on password protected networks accessible only by certain employees with need to use such information on CFF's behalf. CFF instructed and instructs these employees to keep Trade Secret Information confidential.

33.     DOMINGUEZ acknowledged being in receipt of valuable Confidential Information. Some of that information constitutes Trade Secrets as defined by the Act.

34.     CFF's Trade Secret Information is not available to the general public and was and is closely guarded by CFF. CFF keeps such information strictly confidential in order to maintain a competitive advantage. Pricing information and customer contact information could be used by competitors to unfairly poach business.

35.     CFF's Trade Secret Information entrusted to DOMINGUEZ, including the information identified herein that he is improperly in possession of, are trade secrets under the DTSA, 18 U.S.C. § 1832 *et seq.*, because CFF derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

36.     DOMINGUEZ has openly used and/or disclosed CFF's Trade Secret Information in violation of the DTSA.  Upon information and belief, DOMINGUEZ has already used or disclosed CFF's Trade Secret Information in violation of the DTSA.  Upon information and belief, DOMINGUEZ knew that this information was CFF's Trade Secret Information that had been improperly misappropriated.

37.     DOMINGUEZ knew or should have known that the information, as described, (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by CFF at great expense and effort; (4) was maintained as confidential and is not generally available to the public and CFF's competitors; (5) would provide significant benefit to a person or company seeking to compete with CFF; and (6) is critical to CFF's ability to conduct its business successfully.  Indeed, by virtue of his receipt of CFF's Nonsolicitation and Confidentiality Agreement, DOMINGUEZ was on actual notice of the above.

38.     DOMINGUEZ and/or other third parties with whom DOMINGUEZ has shared CFF's information will be or have been unjustly enriched by the misappropriation and/or threatened misappropriation of CFF's Trade Secret Information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate CFF's Trade Secret Information.

39.     As a result of the threatened and/or actual misappropriation of CFF's Trade Secret Information and other confidential information, CFF will be threatened with loss of business expectancies, customers, employees, its trade secrets and goodwill in amounts which may be impossible to determine, unless DOMINGUEZ is enjoined and restrained by order of the Court.

40.     In addition, CFF seeks damages for the actual loss caused by the misappropriation of the trade secret(s), damages for unjust enrichment or in lieu of damages by any other methods, the damages caused by the misappropriation measured by the imposition of liability for a reasonabe royalty for the misappropriator's unauthorized disclosure or use of the trade secret(s) and exemplary damages and attorney's fees and costs pursuant to 18 U.S.C. §1836 (b)(3).

41.     Because DOMINGUEZ's misconduct is ongoing and poses a threat of significant irreparable harm that cannot be compensated by money alone, CFF requests that this Court grant injunctive relief against DOMINGUEZ from actual or threatened disclosure or utilization of CFF's Trade Secret Information, in addition to granting CFF their attorneys' fees and exemplary damages.

## COUNT II

### Breach of Employee Non-Competition Agreement

42.     CFF hereby re-alleges paragraphs 1 through 29 above as if set forth fully herein.

43.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, in its substantial relationships it has had with specific existing customers.

44.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, in its prospective customers.

45.     At all times material to this Complaint, CFF had and continues to have a

legitimate business interest, as that term is defined in Fla. Stat. § 542.335, in its customer goodwill that has come about as the result of more than twenty-five (25) years of doing business in South Florida.

46.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, based on its unique and proprietary information processes and procedures.

47.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, based on the extraordinary training given to employees, including, but not limited to, DOMINGUEZ.

48.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, based on the unique contacts that it has developed over the years.

49.     At all times material to this Complaint, CFF had and continues to have a legitimate business interest, as that term is defined in Fla. Stat. § 542.335, based on its knowledge of customer and vendor preferences.

50.     The terms of CFF's Noncompete Agreement which DOMINGUEZ agreed to are reasonably necessary to protect one or more of CFF' business interests.

51.     DOMINGUEZ breached the terms of CFF's Noncompete Agreement when DOMINGUEZ solicited existing customers and business away from CFF for his own personal gain both during and after DOMINGUEZ' employ with CFF.

WHEREFORE, CFF demands judgment against DOMINGUEZ for compensatory damages, attorney's fees pursuant to Fla. Stat. § 542.335 (1) (k), costs and such other relief, including permanent injunctive relief, as the Court may deem just and proper.

## COUNT III

### Breach of Fiduciary Duty

52.     CFF adopt and re-allege the allegations contained in paragraphs 1 through 29 herein and further states:

53.     DOMINGUEZ, handled and dealt with CFF's customer accounts, and was entrusted with confidential pricing information and customer preferences in addition to knowledge of each customer's willingness to pay costs at certain levels.    Thus, DOMINGUEZ obtained confidential knowledge about the level of profitability that could be had with each customer.

54.     DOMINGUEZ took advantage of and abused his position of trust with CFF by taking business away from CFF and giving it to other companies and/or or using CFF's vendors to service CFF's clients for DOMINGUEZ' personal benefit.

55.     As a direct and proximate result of the above-described activities, CFF continues to incur extensive damages, including but not limited to the loss of customers and work from customers, lost business opportunities, and the expense of the instant litigation.

WHEREFORE, CFF demands judgment for damages, plus court costs, attorney's fees (pursuant to the Wrongful Act Doctrine), interest and any other relief this Court deems just and proper.

## COUNT IV

### Violation of the Florida Uniform Trade Secrets Act (Florida Statutes Section 688.001 *Et. Seq.*

56.     CFF hereby re-alleges paragraphs 1 through 29 above as if set forth fully herein.

57.     CFF's confidential information constitute trade secrets because they derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain value from disclosure and use.

58.     CFF'S trade secrets were misappropriated by DOMINGUEZ in violation of Fla. Stat. § 688.001 *et seq*.

59.     CFF's customer list, vendor list and information pertaining to each, including customer and vendor preferences have been compiled over a period of more than twenty-five (25) years and is a compilation from which CFF derives economic value.  This compilation includes information about customer identities, customer preferences and customer's transportation budgets and proclivities.  This information is held confidential by CFF.

60.     CFF took all reasonable steps under the circumstances to maintain the secrecy of its trade secrets.

61.     DOMINGUEZ has misappropriated CFF's trade secrets, including its customer and vendor lists and related information by using that information to divert business away from CFF and for his personal gain and/or the gain of others.

62.     During   and   after   DOMINGUEZ's   employment   with   CFF, DOMINGUEZ misappropriated and embezzled CFFs Trade Secrets.  DOMINGUEZ has utilized such information to do business with some or all of specific, prospective customers to or has attempted to sell them products in competition with the products offered by CFF.

63.     DOMINGUEZ misappropriated CFF's Trade Secrets without the knowledge or consent (express of implied) of CFF with the purpose of utilizing such

trade secrets for his own personal gain.  DOMINGUEZ knew that the CFF's Trade Secrets belong to CFF and DOMINGUEZ was not and is not permitted to utilize or disclose the confidential information.

64.     DOMINGUEZ has utilized CFF's trade secrets for his own personal gain and continues to do so.

65.     As a result of DOMINGUEZ actions, CFF has sustained damages including special damages of lost profits.

66.     DOMINGUEZ' actions were willful and malicious.

67.     CFF is entitled to the recovery of reasonable attorney's fees under the Uniform Trade Secrets Act (Florida Statutes Section 688.001 *et. seq.).*

68.     CFF has retained the services of the undersigned attorney to represent it in connection with this action and has agreed to pay the undersigned attorney a reasonable fee for such representation.

WHEREFORE, CFF demands judgment against DOMINGUEZ for damages (including special damages of lost profits), injunctive relief, court costs, attorney's fees and such other relief to which CFF may be entitled.

## COUNT V

### Conversion

69.     CFF realleges and incorporates herein by reference Paragraphs 1 through 29, above.

70.     DOMINGUEZ has unlawfully converted CFF's property including but without limitation CFF's Trade Secrets that CFF had a right and expectation to have held

confidentially.

71.     CFF has an immediate superior right of possession in the converted property of CFF's Trade Secrets.

72.     DOMINGUEZ exercised unauthorized dominion over the converted property to the exclusion of CFF's rights.

73.     DOMINGUEZ' use of CFF's Trade Secrets for his own personal gain constitutes conversion.

74.     DOMINGUEZ has also used CFF's monies to cover the costs of some of the freight or transportation business that DOMINGUEZ diverted away from CFF to himself or to other companies for which DOMINGUEZ also personally gained.

75.     Consequently, CFF has already suffered a loss of business in an amount to be determined at trial.

76.     In addition to money damages, CFF is entitled to an immediate temporary injunctive, as well as permanent injunctive, relief.

WHEREFORE, CFF demands judgment against DOMINGUEZ for damages (including special damages of lost profits), injunctive relief, court costs and such other relief to which CFF may be entitled.

## **COUNT VI**

### **Tortious Interference with Advantageous Business Relationships**

77.     CFF hereby re-alleges paragraphs 1 through 29 above as if set forth fully herein.

78.     CFF has had advantageous business relationships with certain specific customers and prospective customers with whom DOMINGUEZ has had contact.

79.     During all relevant times to this complaint, DOMINGUEZ had knowledge of the existence of the CFFs advantageous business relationships with CFFs customers.

80.     DOMINGUEZ has intentionally and unjustifiably interfered with CFF business relationships with its clients by using confidential and private information about CFF clients that was misappropriated from CFF to solicit such clients to leave CFF and receive services from DOMINGUEZ.  DOMINGUEZ has also defrauded customers by purporting to act on behalf of CFF and with the false check endorsements.

81.     DOMINGUEZ intentionally, knowingly, without justification, through improper methods and with malicious intent interfered with such relationships. DOMINGUEZ utilized CFF's Trade Secrets, which was misappropriated by DOMINGUEZ for his own personal gain. DOMINGUEZ interfered or attempted to interfere with the advantageous business relationships of CFFs.

82.     DOMINGUEZ continues to interfere with CFF's advantageous business relationships.

83.     As a direct and proximate result of DOMINGUEZ's wrongful actions, CFF has been damaged, and is likely to continue to be damaged, and substantially and irreparably injured in its business.  By virtue of DOMINGUEZ' tortious conduct and other breaches, DOMINGUEZ solicited or induced CFFs clients and prospective clients, with which CFF was in negotiations with, to do business with DOMINGUEZ for his own personal gain or for the gain of third parties with whom DOMINGUEZ worked instead of CFF.

84.     Absent DOMINGUEZ's interference, CFF would have continued transacting business with such specific current customers, or had additional business from them, and enjoyed the benefits of the opportunities to transact new business with the

15

prospective customers.

85.     As a result, the CFF has sustained damages (including special damages of lost profits).

WHEREFORE, CFF demands judgment against DOMINGUEZ for damages (including special damages of lost profits), injunctive relief, court cots and such other relief to which CFF may be entitled.


## COUNT VII

### Unjust Enrichment

86.     CFF hereby re-alleges paragraphs 1 through 29 above as if set forth fully herein.

87.     CFF has conferred a benefit on DOMINGUEZ by allowing him access to their computer system, confidential information, trade secrets and other information from which they derive economic value (collectively "confidential information").

88.     DOMINGUEZ abused that access when he used that confidential information for his own personal gain.

89.     It would be inequitable for DOMINGUEZ' to retain the monies he made through the use of CFF's confidential information.  acceptance of these benefits, or theft of such.

WHEREFORE, CFF demands judgment against DOMINGUEZ for damages (including special damages of lost profits), injunctive relief, court cots and such other relief to which CFF may be entitled.

## COUNT VIII

### Constructive Fraud

90.     CFF hereby re-alleges paragraphs 1 through 29 above as if set forth fully herein.

91.     DOMINGUEZ abused the confidential information he was allowed to access by his employ with CFF and concealed his efforts to use that information for his personal gain.

92.     DOMINGUEZ created fake invoices, diverted business away from CFF all while purporting to act in CFF's interest, defrauded CFF and its customers by having some customers and CFF absorb the costs of certain jobs he fraudulently performed for customers, having customers believe they were dealing with CFF and not DOMINGUEZ personally, and the false check endorsements.

93.     It would be inequitable for DOMINGUEZ' to retain the monies he made through the use of CFF's confidential information.  acceptance of these benefits, or theft of such,

WHEREFORE, CFF demands judgment against DOMINGUEZ for damages (including special damages of lost profits), injunctive relief, court cots and such other relief to which CFF may be entitled.

## COUNT IX
### BREACH OF DUTY OF LOYALTY

94.     CFF realleges the allegations contained in paragraphs 1 through 29 as though fully set forth herein.

95.     As an employee of CFF, Defendant DOMINGUEZ owed a duty to CFF to act in good faith and in the best interests of the corporation.

96.     As an individual required to up-hold the duty of loyalty to CFF, DOMINGUEZ had a duty to exercise the utmost good faith and to make full disclosure of all facts within his knowledge pertaining to transactions he was involved with while employed by CFF.

97.     Based upon the actions taken by DOMINGUEZ during his employ, he breached his duty of loyalty to CFF diverting business away from CFF either to himself or to another company, but in both instances, for his own personal gain.

98.     As a direct and proximate result of Defendant DOMINGUEZ's breach of his duty of loyalty, CFF has suffered damages.

WHEREFORE, CFF demands judgment against Defendant DOMINGUEZ for damages, together with interest, costs and such other and further relief as it appears lawful, equitable and just.

## COUNT X

### Preliminary and Permanent Injunctive Relief Against DOMINGUEZ

99.     CFF incorporates the factual allegations set forth in paragraphs 1 through 29 above as if fully set forth herein.

100.    CFF will suffer irreparable harm if DOMINGUEZ continues to solicit CFF's customers.

101.    CFF has no adequate remedy of law that would serve to immediately enjoin DOMINGUEZ continued and unlawful use of CFF's confidential and trade secret information.

102.    CFF has a substantial likelihood of success on the merits on its claims for breach of contract, misappropriation of trade secrets and tortious interference with business relationships, among other violations.

103.    The entry of a temporary injunction will serve the public interest by preserving the integrity of confidential client and other information.

104.    CFF has a clear legal relief to the relief sought herein.

WHEREFORE, CFF demands, pursuant to *inter alia*, 18 U.S.C. § 1836 (b)(3)(A), that the Court enter an injunction against DOMINGUEZ to enjoin his continued use of CFF's trade secret information, breaches of the restrictive covenants in the Agreement attached hereto as Exhibit A, including but not limited to enjoining DOMINGUEZ's unlawful solicitation of CFF's clients and that DOMINGUEZ not work in the freight forwarding industry for a time to be determined and not otherwise violate his noncompete agreement and prays for such other relief in equity which this Court deems just and proper, including but not limited to reasonable attorney's fees and costs.

## **<u>Verification of Complaint</u>**

*Dominguez v. Continental Freight Forwarding*
Southern District Florida

I declare under penalty of perjury that the factual allegations contained in paragraphs

7 through 29 of the Complaint are true and correct.


Joseph A Ciero
_____
JOSEPH ANTHONY CIERO

**Signature:** *Joseph Ciero*
Joseph Ciero (May 1, 2025 10:16 EDT)
**Email:**  tciero@cff-inc.com

Respectfully submitted this Monday, May 5, 2025.

GARY A. COSTALES, P.A.

1533 Sunset Drive, Suite 150
Miami, FL 33143
Telephone: (786) 448-7288
(786) 446-7298 (direct)
(786) 323-7274 (facsimile)


  s/ Gary A. Costales
Gary A. Costales, Esq.
Florida Bar No. 0948829